ENRIQUE RODRÍGUEZ, Plaintiff, Cross-defendant and Appellant, v. CARMEN C. ALBIZU, Defendant, Cross-plaintiff and Appellee.

No. 11197. Argued May 3, 1954.—Decided May 28, 1954.

*José I. Fernández Segarra* for plaintiff, cross-defendant, and appellant. *Charles Cuprill* for defendant, cross-plaintiff, and appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In December 1951, Enrique Rodríguez filed in the Ponce Section of the former District Court a suit for divorce, against his wife, Carmen C. Albizu on the ground of desertion. The defendant filed no timely answer and her default was entered. Thereafter the defendant filed an answer denying the charge of desertion, and also a counter-claim alleging cruelty and grave offenses on the part of her husband. She also filed the same day a separate motion asking for support *pendente lite* and *expensæ litis*. The lower court allowed the filing of these motions after vacating the default entered against the defendant. After defendant's answer was filed and before the default entered against her was set aside by the court, plaintiff filed a motion withdrawing the complaint. The plaintiff filed no allegations against the counter-claim and default was therefore entered. The motion for support *pendente lite* and *expensæ litis* was never heard nor disposed of.

The hearing of the divorce action was finally set and held on January 9, 1953. Although plaintiff cross-defendant did not appear personally at the trial, he was nonetheless represented by counsel. In the course of the testimony defendant cross-plaintiff requested that her husband be ordered to pay her alimony after the divorce was decreed, which she never alleged or requested in her counter-claim. After testifying that she needed a monthly allowance of $50, plaintiff cross-defendant cross-examined her on the latter's income.[1] Thereafter the lower court rendered judgment with the following pronouncements: (1) it dismissed the complaint on the ground that plaintiff had withdrawn it; (2) it sustained the counter-claim in its entirety and, consequently, decreed the divorce on the grounds of cruelty and grave offenses on the part of the husband to the wife; (3) it directed the plaintiff cross-defendant to pay the cross-plaintiff, as long as she remained single, a monthly allowance of $40 as of February 1, 1953; and (4) it ordered cross-defendant to pay the costs and $100 for attorney's fees.

---

[1] The cross-examination was as follows:

"Lic. Fernández Segarra: I wished to ask you about his income. Madam, don't you know how much he earns? —He earns about one hundred and fifty dollars.

"Do you believe he earns that much? —Yes.

"Do you know if he has any debts? No, sir.

"Did you ever learn if he has any debts? —No, sir.

"Where does he live? —At 14 Mayor St.

"Separated from you? —Yes.

"14 Mayor St.? —Yes.

"In Ponce? —In Ponce.

"Who pays the rent for that house? —The house is his sister's. He does not pay any rent.

"Does it belong to a sister of his? —Yes.

"Do you know if he pays his sister for living with her? —I don't think so.

"Where does he room and board? —At his sister's house.

"Do you know if he pays anything for room and board? —I believe he doesn't.

"Does he get free meals? —She is his sister.

"That's all."

The judgment thus rendered was duly notified to the attorney for plaintiff cross-defendant. The latter did not move for reconsideration or take an appeal, or request that it be set aside or vacated, wherefore the judgment became final and enforceable. However, plaintiff cross-defendant failed to abide by the judgment as respects the obligation to pay an allowance for support to cross-plaintiff. She thereupon moved that summons for contempt be issued on him. The lower court so ordered, and at the hearing the cross-defendant attacked on several grounds the validity of the divorce decree as respects the payment of alimony. The trial court overruled all the objections raised by defendant and entered an order directing the latter to deposit in the office of the clerk, within 30 days, the sum of $100 for attorney's fees, $240 for past allowances, and also to continue the payment of the allowances during subsequent months and until further order of the court under pain of contempt.

This appeal was taken from that order.

Appellant now maintains that the trial court erred (a) in unlawfully including in the divorce decree a provision for support, notwithstanding the fact that the cross-plaintiff did not allege or claim any in her counter-claim; (b) in ordering, in abuse of its discretion, the payment of costs and attorney's fees in the divorce decree; and (c) in assuming jurisdiction over the person of plaintiff cross-defendant for the purpose of ordering him to pay alimony, costs, and attorney's fees in the divorce suit.

 This assignment might perhaps be proper in an appeal from a divorce decree, but not from an order entered by the lower court in the contempt proceeding. In any event, appellant raised in that proceeding fundamentally the same questions as are now before us. The trial court held that the objections against the divorce decree raised by

appellant in the contempt proceeding was a collateral attack on that decree, and that appellant was precluded from so doing.

:. A direct attack on a judgment is one which is made in the same action by way of any of the proceedings provided by law, as for example, by appeal, motion for a new trial, or motion for a rehearing, provided, of course, that the attack is made within the period fixed by law. An attack made in any other manner, whether in an independent proceeding, before another court, or after the expiration of the time allowed by statute, is a collateral attack. *Pérez* v. *District Court*, 70 P.R.R. 624; *Intermill* v. *Nash*, 75 P. 2d 157; *Broyhill* v. *Dawson*, 191 S. E. 779; *Thompson* v. *Short*, 106 P. 2d 720; *In re Peterson's Estate*, 123 P. 2d 733; See also Freeman *On Judgments*, Vol. 1, 5th ed., § § 306 and 307, p. 604; 49 C.J.S. 805, § 408; *Restatement of the Law of Judgments*, § 11, p. 65. It has been held that every legal step of whatever nature that is taken to carry out or execute the judgment, or to obtain the benefits it adjudges, is to some extent collateral to the judgment. Every matter urged in the course of such proceedings as a reason for declaring the judgment void is interposed by way of collateral attack. A party who neglects or refuses to comply with the terms of an order or judgment and attacks the validity of the same when proceeded against in contempt for such disobedience occupies the position of a collateral assailant. 1 Freeman *On Judgments*, p. 625, § 311, and cases cited as illustrative of such doctrine in note 9 of that Section; 49 C.J.S. 813, § 409; Restatement of the Law, *op. cit.*, p. 68.

This Court has held that where a stipulation providing payment for alimony is incorporated in a judgment of divorce, the wife has two methods of enforcement: "One is punishment by the state for failure to obey the judgment of the court; the other is suit by the wife for collection." *Valdés* v. *Hastrup*, 64 P.R.R. 569. It was also held there

that a collateral attack on the original judgment in a suit brought by the wife for collection of alimony in arrears, will not lie under the circumstances of that case. According to the doctrine already announced, neither will a collateral attack on a judgment lie in a proceeding for contempt for disobedience of such judgment, since such proceeding is one of the two methods available to the party entitled to alimony in an action for support to compel compliance therewith, provided, however, that the collaterally attacked judgment be valid according to the norms which follow. Annotation in 12 A.L.R. 2d 1107.

 The general rule is that a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, with respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment as long as it stands unreversed and in force. 1 Freeman *On Judgments*, § 305, p. 602, and § 322, p. 642; 49 C.J.S., § 401, p. 792; 31 Am. Jur., § 576, p. 175; *Restatement of the Law of Judgments*, § 11, p. 65; *Fishel* v. *Kite*, 101 F. 2d 685; certiorari denied, 306 U.S. 656; *Hodge* v. *Huff*, 140 F. 2d 686, certiorari denied 322 U.S. 733; *McCampbell* v. *Warrich Corp.*, 109 F. 2d 115, certiorari denied, 310 U.S. 631; *Walling* v. *Miller*, 138 F. 2d 629, certiorari denied, 321 U.S. 784; *Farrell* v. *Farrell*, 10 So. 2d 153; *In re Keet's Estate*, 100 P. 2d 1045; *Wells Fargo & Co.* v. *City and County of San Francisco*, 152 P. 2d 625; *Scholl* v. *Tibbs*, 36 A. 2d 352; *Skipper* v. *Schumacher*, 169 So. 58, certiorari denied, 299 U.S. 507; *State ex rel. Fulton Bag & Cotton Mills* v. *Burnside*, 15 So.

2d 324; *U. S. Building & Loan Ass'n.* v. *Soule*, 68 P. 2d 40; *Knaus* v. *Chicago Title & Trust Co.*, 7 N.E. 2d 298; *People ex rel. Courtney* v. *Fardy*, 39 N.E. 2d 7; *Niven* v. *Crawfordsville Trust Co.*, 26 N.E. 2d 58; *In re Haga's Estate*, 294 N. W. 589; *Mahaffa* v. *Mahaffa*, 298 N.W. 916; *Com.* v. *Miniard*, 99 S. W. 2d 166; *Eversole* v. *Smith*, 178 S. W. 2d 970; *Gumbel* v. *New Orleans Terminal Co.*, 183 So. 212, certiorari denied, 305 U. S. 654; *Rowan* v. *State, to Use of Grove*, 191 A. 244; *Elfman* v. *Glaser*, 47 N. E. 2d 925; *Todd* v. *Todd*, 20 So.2d 827; *Central Paving & Construction Co.* v. *Eighth & Morgan Garage & Filling Station*, 159 S. W. 2d 660; *McCormick* v. *Murray*, 274 N. W. 383; *State* v. *Patten*, 69 P. 2d 931; *In re Chase Nat. Bank of City of New York*, 28 N. E. 2d 868; *Simms* v. *Sampson*, 20 S. E. 2d 554; *Kelsch* v. *Dickson*, 1 N. W. 2d 347; *Binns* v. *Isabel*, 51 N. E. 2d 501; *Lee* v. *Harvey*, 156 P. 2d 134; *Linn County* v. *Rozelle*, 162 P. 2d 150; *In re ReQua's Estate*, 18 N. W. 2d 791; *Sugg* v. *Sugg*, 152 S. W. 2d 446; *Santerre* v. *Sylvester*, 189 A. 159; *Buchanan* v. *Buchanan*, 197 S. E. 426; *Intermill* v. *Nash*, 75 P. 2d 157; *Long* v. *Stratton*, 72 P. 2d 939; *Baker* v. *Brown*, 23 N. E. 2d 710; *Bowser* v. *Tobin*, 18 N. E. 2d 773. See also cases cited in 28 Fifth Dec. 975. This rule is equally applicable to judgments entered upon default. 3 Freeman *On Judgments*, p. 2690, §§ 1296 and 1297; 31 Am. Jur. 135, 136; *Linn County* v. *Rozelle, supra.*

Appellant does not question the power of a court to take cognizance of suits for divorce and support. Neither can it be questioned that in the case at bar the court acquired jurisdiction over plaintiff cross-defendant by submission of the latter through the act of filing the complaint. Section 77 of the Code of Civil Procedure. The real attack on the validity of the judgment is based on the fact that appellant did not have his day in court on the matter of alimony. This claim is based on the fact that the counter-claim did not demand support, nor did she pray for any such relief. We

are agreed that a sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to respect in any other tribunal. 1 Freeman, *op. cit.*, p. 666, § 333. A judgment thus rendered would violate the principle of due process of law. It follows that the judgment must strictly conform to the pleadings, and the relief granted cannot properly exceed that authorized by the facts alleged. Rule 54 (c) of the Rules of Civil Procedure; 3 Freeman, *op. cit.*, p. 2686, § 1294; 3 Moore's Federal Practice, p. 1205, § 54.61; p. 1822, § 55.08.

It is difficult for appellant to allege that he was not given an opportunity to be heard. He was represented at the trial by his attorney and, when the cross-plaintiff raised the question of the support needed after the divorce was decreed, he elected to intervene by cross-examining her on appellant's income and, hence, on his financial capacity to pay the alimony prayed for by his wife. He raised no objection to the proceeding instituted, nor did he request an opportunity to offer evidence on the question of alimony. He had available several direct methods to attack the judgment of which he was notified, either because he considered insufficient or irregular the notice of the demand for alimony, or for any other good reason to attack the judgment as erroneous. Under the circumstances surrounding this case, the most appellant could do is to assail the judgment as erroneous. We have seen, however, that that would not entitle him to attack the judgment collaterally. Some courts take the view that if the defendant in default makes no appearance at the trial and the wife does not demand support in her suit for divorce, the judgment awarding support is void as a violation of the principle of due process of law. *State* v. *Superior Court*, 220 P. 2d 1081; *Binns* v. *Isabel*, 51 N. E. 2d 501. Other courts hold that, since the award of alimony is so germane to the cause of action for divorce,

such judgment is not void but erroneous, which may be corrected by appeal, either by a reversal or by a modification of the judgment, but not collaterally. *Parker* v. *Parker*, 266 Pac. 283; *Darsie* v. *Darsie*, 122 P. 2d 64; *Linn County* v. *Rozelle, supra.*

We have nonetheless decided that appellant herein was afforded an opportunity, though in an irregular fashion, to be heard on the alimony demand, and that an amendment to the complaint in that sense, though irregular, might render the judgment erroneous but not void. We therefore conclude that appellant was barred from collaterally attacking the judgment which led to the contempt proceeding, and that the lower court committed no error in so holding.

The order appealed from will be affirmed.